LUTHER H. BEALS *vs.* JOHN MAYHER & others.

Hampshire.     September 19, 1899. — October 25, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Assignment for Benefit of Creditors — Rights in Fund of Holder and Indorser of Promissory Note made by Assignor — Effect of Partial Payment by Indorser.*

The holder of a promissory note, the maker of which has made an assignment for the benefit of his creditors without reference to any proof made or assent given by them, is entitled to participate in the estate for the full amount of the note, without deducting a partial payment received from an indorser in discharge of his liability, and the latter has no right, by reason of such partial payment, to prove the amount thereof in competition with the holder.

BILL IN EQUITY, filed in the Superior Court, by the indorser of certain promissory notes made by the Haydenville Manu-

facturing Company and held by the First National Bank of Northampton, the First National Bank of Easthampton, and the First National Bank of Westfield, against John Mayher and George N. Robinson, assignees of the Haydenville Manufacturing Company under an assignment for the benefit of its creditors, and the said corporation, and to which the three banks were made parties defendant, to obtain payment of the plaintiff's alleged proportionate share of the fund in the hands of the assignees in accordance with the terms of the assignment. Hearing before *Bell*, J., who entered a decree for the plaintiff; and the several banks alleged exceptions. The facts appear in the opinion.

*W. G. Bassett*, for the claimants.

*A. L. Green*, for the plaintiff.

LORING, J. Prior to May 12, 1897, the Haydenville Manufacturing Company was indebted to the First National Bank of Northampton, to the First National Bank of Easthampton, and to the First National Bank of Westfield, on certain promissory notes signed by it and indorsed by the plaintiff for its accommodation. On that day the manufacturing company made an assignment to the defendants Mayher and Robinson for the benefit of its creditors. On December 12, 1897, the three banks received from the plaintiff thirty per cent of the amount due on the notes, and released the plaintiff from his liability as indorser. The plaintiff had previously been adjudicated an insolvent debtor, but upon these payments being made and the releases mentioned above being given the insolvency proceedings were stayed. The plaintiff contended that he was a creditor of the manufacturing company for the several sums so paid by him, and was entitled to share as such in the assets in the hands of the assignees; and further, that the banks could share in those assets only for the balance of the notes left after deducting the sums paid by him. The assignees refused to recognize the plaintiff as a creditor entitled to share in the estate, and this bill was brought before any dividend had been declared or paid by the assignees, to enforce the trusts set forth in the assignment and the plaintiff's contention as to his rights and those of the banks to share in the assets. The three banks were made parties defendant; they appeared and set up that they were creditors to the full amount of the notes, and that the plaintiff was not entitled to prove as a

creditor at .all.   The Superior Court ruled that the plaintiff was entitled to stand as a creditor for the sums paid by him, and the banks could only share in the assets for the balance of the notes after deducting those sums.

The terms of the assignment by the manufacturing company were as follows: " And. then to pay and discharge in full, if the residue of said proceeds is sufficient for that purpose, all the debts and liabilities now due or to grow due from the Haydenville Man. Co., with all interest money due or to grow due thereon."   There is no provision for any assent by the creditors to the assignment, for any discharge of the assignor, or for any notice to the creditors.

The notes held by the Westfield bank " were duly proved by the said bank before the assignees before the plaintiff brought his suit and before he paid his money to the said banks or any of them," but the notes of the other banks were not so proved.

It is settled in this Commonwealth, in England, and generally in America, that the holder of a note, on which the indorser's liability has become absolute, has the right to prove the full amount against the estates in bankruptcy of both maker and indorser, provided no payment from either had been received before proof made; and it is settled that after such proof the receipt of dividends from one estate does not cut down the holder's right to receive dividends on the whole amount proved against the other estate ; and, further, it is immaterial whether the subsequent payment is received from the maker after proof made against the indorser or *vice versa;* for, in the words of Lord Hardwicke in *Ex parte Wildman*, 1 Atk. 109, 110, to cut down the dividends due on the proof made " would be taking away from a man the double security he had, and which he may make use of in law and equity, till he is satisfied his whole debt." *National Mount Wollaston Bank* v. *Porter*, 122 Mass. 308, 309. *Ex parte Turquand*, 3 Ch. D. 445.   *In re Ellerhorst*, 5 Nat. Bankr. Reg. 144.   *In re Weeks*, 13 Nat. Bankr. Reg. 263.

When, however, the holder has received a partial payment before making proof, the authorities in America and England do not altogether agree as to what the rights of the several parties are.   It is settled in both countries that if the holder has received a payment from the maker before he proves against the

indorser, he can prove for the balance of the note only. *Sohier* v. *Loring,* 6 Cush. 537 ; the cases on this and the preceding point are collected in Ames, Suretyship, 419, note.

In America it is held by the great preponderance of authority that a payment received from an indorser need not be deducted in making proof against the bankrupt estate of the maker. *Ex parte Talcott,* 2 Lowell, 320. *Ex parte Harris,* 2 Lowell, 568. *Downing* v. *Traders' Bank,* 2 Dillon, 136. *In re Ellerhorst,* 5 Nat. Bankr. Reg. 144–147. *In re Baxter,* 18 Nat. Bankr. Reg. 497–499. *In re Pulsifer,* 14 Fed. Rep. 247, 249.

But in England it is established that a partial payment received before proof must be deducted as well when the payment is received from the indorser and proof is made against the maker, as when proof is made against the indorser after a partial payment by the maker. *Ex parte Tayler,* 1 De G. & J. 302. *In re Oriental Commercial Bank,* L. R. 6 Eq. 582. Where it is held that the note holder can prove for the balance only, the indorser is allowed to prove against the estate of the maker the partial payment which he has made ; this was admitted in *Ex parte Turquand,* 3 Ch. D. 445. See *Ex parte Wood,* cited 10 Ves. 415 ; *In re Sterling,* 4 Hughes, 553. In America the whole debt being proved by the note holder, there is no room for any proof by the indorser who has made a partial payment ; to allow proof by him as well as proof of the whole debt by the creditor would be to allow a double proof in respect of the same debt.

In the case at bar payment was made by the plaintiff after the date of the assignment, and his right to indemnity did not accrue until then. *Thayer* v. *Daniels,* 110 Mass. 345. But any difficulty by reason of the date when the plaintiff's claim accrued is obviated by the provision of the deed of assignment, by which debts and liabilities to grow due were secured, as well as those due when the assignment was made.

The rule of the United States courts in bankruptcy is founded upon the strict legal rights of the parties, and by it all the conflicting rights and equities which the parties severally have are secured to them, and we are of opinion that it must be adopted as the rule governing this assignment.

It was decided in *Jones* v. *Broadhurst,* 9 C. B. 173, and has been settled to be the law of England for nearly half a century,

that a partial payment by an indorser is not an extinguishment *pro tanto* as against the maker. *Agra & Masterman's Bank* v. *Leighton*, L. R. 2 Ex. 56. *Thornton* v. *Maynard*, L. R. 10 C. P. 695. *Jones* v. *Broadhurst* has been followed in New York. *Beran* v. *Tradesmen's National Bank*, 137 N. Y. 450.

In this Commonwealth the point has never been decided ; in *North National Bank* v. *Hamlin*, 125 Mass. 506, 508, Mr. Justice Lord stated that such was the law. In *Granite National Bank* v. *Fitch*, 145 Mass. 567, this court held that a partial payment made by an indorser under an express agreement was not an extinguishment *pro tanto*, and left undecided the question where payment by an indorser is made without any agreement.

By the rule of the United States Bankruptcy Court the whole debt is proved by the note holder against the estate of the maker. If the surety pays the note in full, as he has agreed to do, he becomes entitled to be subrogated to the proof. If the proof is made after a partial payment made by him, it is for his interest that the proof shall be allowed for the full amount; for if he pays the balance of the note it is his right to be subrogated to the maker's proof, and it is for his interest that that proof should be a proof in full.

Until he has paid the balance and discharged his contract in full it is impossible to allow him to prove the partial payment in. competition with the note holder. So long as the indorser leaves unpaid any portion of the sum which he has guaranteed shall be paid and shall be paid in full, he has no right, by proving against the bankrupt estate of the debtor the partial payment made by him, to compete with the note holder and so diminish the dividend which the note holder will recover; this was the opinion of Lord Eldon in case of a partial payment made by a surety, though the law had been otherwise settled in England in *Ex parte Wood*, cited in 10 Ves. 415. See *Ex parte Rushforth*, 10 Ves. 409, 417.

By allowing the note holder to prove in full, the rights of the indorser are fully secured ; for if the note holder recovers in dividends from the estate of the maker such sum as, added to the partial payment made by the surety, gives him more than one hundred cents on the dollar, he will hold any surplus for the indorser.

Whether Pub. Sts. c. 157, § 26, (St. 1838, c. 163, § 3 ; Gen. Sts. c. 118, § 25,) is to be construed to be an adoption of the English rule or merely to authorize proof of a partial payment made by an indorser after publication of the warrant against the maker, in cases where it would have been provable had the payment been made before the publication of the warrant, that ·is to say, where the note holder has failed to prove, need not now be considered.    That statute does not govern this assignment.

In the case at bar the payment made by the plaintiff was plainly made in partial fulfilment of, and to obtain a full discharge from, the plaintiff's liability as indorser, and in no way on account of the manufacturing company so as to stand as a payment by it, and must be held not to be an extinguishment of the note *pro tanto* but to leave the note unpaid in full as against the maker.

By its terms the assignment in the case at bar was made for the benefit of all the creditors of the manufacturing company, without reference to any proof made or assent given by them. It is not necessary to decide when, in case of such an assignment, the rights of a creditor to share in the estate attach, or whether proof of a claim is or is not necessary.

If the creditors are entitled to share without proof, the rights of all three banks attached before the payment by the plaintiff ; and it is clearly established that the right of a creditor to share in dividends on the amount of its claim as established is not affected by a subsequent partial payment, no matter by whom made.    If no right to share in the assets vested in any creditor until proof made, the Westfield bank's right to a dividend for the full amount is clearly made out by the proposition just stated, and the right of all three banks to a dividend on the full amount is made out by the rule which we have spoken of as the American rule, and which was adopted in *Ex parte Talcott*, 2 Lowell, 320.

We are, therefore, of opinion that the three banks had the right to participate in the estate for the full amount of the notes held by them, and without deducting the partial payment received from the plaintiff in discharge of his liability as indorser ; and that the plaintiff had no right by reason of the partial payment made by him to prove the amount thereof in competition with the banks. ·                                        *Exceptions sustained.*